IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-00181-PAB

BILLY E. REID,

    Applicant,

v.

WARDEN JEFF LONG, Sterling Correctional, and
PHIL WEISER, Attorney General of the State of Colorado,

    Respondents.

## ORDER TO DISMISS IN PART AND FOR ANSWER

Applicant, Billy E. Reid, is a prisoner in the custody of the Colorado Department of Corrections. Mr. Reid has filed *pro se* a second amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, Docket No. 15, challenging the validity of his convictions and sentences in the District Court for Jefferson County, Colorado, case number 2006CR1797. On May 18, 2020, Magistrate Judge Gordon P. Gallagher ordered Respondents to file a Pre-Answer Response limited to addressing the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies pursuant to 28 U.S.C. § 2254(b)(1)(A) if Respondents intend to raise either or both of those defenses in this action. On July 24, 2020, Respondents filed a Pre-Answer Response, Docket No. 25, arguing that the second amended application should be dismissed in part. On August 13, 2020, Mr. Reid filed Applicant's Reply to

1

Respondents' Pre-Answer Brief, Docket No. 26. On August 31, 2020, Mr. Reid filed a Prisoner Motion for Appointment of Counsel, Docket No. 27.

The Court must construe the second amended application and other papers filed by Mr. Reid liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See* Hall, 935 F.2d at 1110. For the reasons stated below, the Court will dismiss the action in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following background information is taken from the opinion of the Colorado Court of Appeals on Mr. Reid's direct appeal.

> On February 14, 1988, police found the body of twenty-three-year-old Q.S., an African-American woman, behind a dumpster in east Denver. Q.S. was clothed in a skirt, a top, and a jacket, but her underwear and pantyhose had been pulled down. There was evidence of anal sex, and forensic examination indicated she had sustained blunt force trauma to her neck and a hyoid bone fracture, consistent with strangulation.
>
> More than a year later, on March 24, 1989, police found the partially decomposed and mummified body of L.K., a thirty-three-year-old African-American woman, on Lookout Mountain. Forensic examination established that she had fractures to the hyoid bone and the cartilage in her neck.
>
> On October 14, 1989, police found the body of L.W., an African-American woman, near Clear Creek. She was thirty years old at the time of her death. L.W. was clothed in a sweater and jeans, but her jeans and underwear had been pulled down to her mid-thighs. An extension cord, a belt, and a tube sock were found wrapped around her neck, and a pair of pantyhose was clutched in her left hand. An autopsy revealed that L.W. had sustained blunt force trauma to her

head, mouth, neck, chest, and lower back. Her hyoid bone was intact, but the cartilage surrounding it had been damaged.

Forensic examiners determined L.W. had died as a result of asphyxiation consistent with strangulation. The autopsy also revealed the presence of several stones in L.W.'s vaginal vault, the placement of which was consistent with manual insertion. In addition, semen was found in L.W.'s anal cavity. However, DNA analysis of the semen in 1990 failed to yield conclusive results.

Fifteen years later, cold case Investigator Moore reopened the L.W. and L.K. cases and submitted the evidence collected during investigation of L.W.'s death for analysis using modern technology. In addition to the semen found in L.W.'s anal cavity, a semen stain was discovered on the extension cord, and trace DNA was found at both ends of the extension cord and the belt. Technicians developed a DNA profile and performed a database comparison of that profile to known DNA profiles, which pointed to defendant.

On May 22, 2006, Moore interviewed defendant, who was incarcerated in the Denver County Jail (DCJ) on traffic matters. When shown photographs of L.W. and L.K., defendant acknowledged that it was possible that he had had sex with them, but stated that he did not recognize them and did not remember if he had ever known them. During the interview, Moore did not use L.W.'s last name, discuss the details of any of the crime scenes, or mention Q.S. at all. At the conclusion of the interview, Moore informed defendant that he would be charged with homicide, and returned defendant to the DCJ.

The next day, Kenneth Thomas, a DCJ inmate, telephoned Investigator Moore and stated that he had information regarding the L.W. murder from 1989. In a series of interviews, Thomas relayed information to her concerning conversations he had with defendant while both were in the DCJ that implicated defendant in the deaths of L.W. and L.K. According to Thomas, defendant said that he had strangled L.W. with his hands at a motel because L.W. had stolen drugs from him, and that he had both anal and vaginal sex

3

> with L.W. on the day she was killed. Thomas also furnished police with defendant's handwritten notes, which identified L.K. and Q.S. by name and L.W. by her initials.
>
> Unaware of who Q.S. was, Investigator Moore had Detective Grimes contact and interview Thomas about her death. During that interview, Thomas reported defendant said that he used his hands to kill all three women because they had big mouths and that "it was over dope."

Docket No. 25-4 at pp.2-5. Evidence regarding Q.S.'s homicide was admitted at Mr. Reid's trial for the limited purposes of establishing identity and a common plan or scheme, but he was not charged in connection with her death. Thomas testified at trial that he could not remember speaking to or even meeting Mr. Reid, Investigator Moore, or Detective Grimes, but he was impeached with his prior inconsistent statements through the testimony of Investigator Moore and Detective Grimes. Mr. Reid was convicted by a jury on two counts of first degree murder after deliberation as to L.K. and L.W., one count of first degree felony murder as to L.W., and one count of first degree aggravated sexual assault by force or violence as to L.W.

On November 6, 2014, the Colorado Court of Appeals affirmed in part, vacated in part, and remanded with directions. *See* Docket No. 25-4.

> We vacate defendant's judgment of conviction for first degree murder after deliberation with regard to L.K. and direct the trial court on remand to enter a judgment of conviction for second degree murder and to resentence defendant on that count. We also vacate defendant's conviction for first degree sexual assault and remand for correction of the mittimus to delete the conviction and sentence on that count. In all other respects, the judgment of conviction is affirmed.

*Id.* at p.101. On January 19, 2016, the Colorado Supreme Court denied Mr. Reid's

4

petition for certiorari review on direct appeal. *See* Docket No. 25-7.

In January 2017, Mr. Reid filed in the trial court a postconviction motion pursuant to Rule 35(a) of the Colorado Rules of Criminal Procedure. *See* Docket No. 25-8. The trial court denied the motion and, on February 14, 2019, the Colorado Court of Appeals affirmed the trial court's order denying the Rule 35(a) motion. *See* Docket No. 25-11. On November 12, 2019, the Colorado Supreme Court denied Mr. Reid's petition for certiorari review in the postconviction proceedings. *See* Docket No. 25-12.

Mr. Reid asserts five claims in the second amended application, including two claims with subparts. In claim 1, he contends his rights under the United States Constitution and Colorado state law were violated because (a) the jury was not given a special verdict form to choose between first degree murder after deliberation and felony murder as to L.W. and (b) he was prosecuted under a charging document that was invalid because the statute of limitations had run on the predicate offense for the felony murder charge. In claim 2, he contends he was subjected to double jeopardy in violation of the state and federal constitutions because he was convicted of both murder after deliberation and felony murder as to L.W. Mr. Reid contends in claim 3 that his state and federal constitutional rights were violated when his conviction for first degree murder of L.K. was amended to second degree murder. In claim 4, he contends his Fourth and Fourteenth Amendment rights were violated by (a) admission of a video-recording showing him in jail attire and handcuffed and (b) illegal seizure of DNA evidence from a soda can and cigarette. Finally, Mr. Reid contends in claim 5 that his state and federal constitutional rights were violated by admission of Investigator Moore's

statements during the video-recorded interrogation. Mr. Reid indicates in his reply to the Pre-Answer Response that several other claims were exhausted in state court and should be added to this action, but he has not filed a motion to amend or provided a clear statement of any additional claims he seeks to assert. Therefore, the only claims properly before the Court are the five claims in the second amended application.

The Court notes initially that, to the extent Mr. Reid is asserting his claims under Colorado state law in addition to the United States Constitution, the claims may not be raised in this habeas corpus action because relief under § 2254 is not available for violations of state law. *See Richmond v. Embry*, 122 F.3d 866, 870 (10th Cir. 1997). Instead, a federal habeas court is limited to deciding whether there has been a violation of "the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Therefore, Mr. Reid's state law claims must be dismissed.

## II. ONE-YEAR LIMITATION PERIOD

Respondents do not argue that this action is barred by the one-year limitation period in 28 U.S.C. § 2244(d).

## III. EXHAUSTION OF STATE REMEDIES

Respondents concede that Mr. Reid has exhausted state remedies for claims 2 and 4(a). However, Respondents argue that claims 1(a), 1(b), 3, 4(b), and 5 were not fairly presented to the state courts and are not exhausted. Pursuant to 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus may not be granted unless it appears that the petitioner has exhausted state remedies or that no adequate state remedies are available or effective to protect the petitioner's rights. *See O'Sullivan v.*

*Boerckel*, 526 U.S. 838 (1999); *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994). The exhaustion requirement is satisfied once the federal claim has been presented fairly to the state courts. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989). Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever*, 36 F.3d at 1534.

Furthermore, the "substance of a federal habeas corpus claim" must have been presented to the state courts in order to satisfy the fair presentation requirement. *Picard v. Connor*, 404 U.S. 270, 278 (1971); *see also Nichols v. Sullivan*, 867 F.2d 1250, 1252 (10th Cir. 1989). Fair presentation does not require a habeas corpus petitioner to cite "book and verse on the federal constitution." *Picard*, 404 U.S. at 278 (internal quotation marks omitted).

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim federal.

*Baldwin v. Reese*, 541 U.S. 27, 32 (2004). However, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citation omitted). "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Duncan v.*

*Henry*, 513 U.S. 364, 365-66 (1995) (per curiam).

Finally, "[t]he exhaustion requirement is not one to be overlooked lightly." *Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995). A state prisoner bringing a federal habeas corpus action bears the burden of showing he has exhausted all available state remedies for each particular claim. *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992). A blanket statement that state remedies have been exhausted does not satisfy this burden. *See Olson v. McKune*, 9 F.3d 95 (10th Cir. 1993); *see also Fuller v. Baird*, 306 F. App'x 430, 431 n.3 (10th Cir. 2009) (stating a bald assertion unsupported by court records is insufficient to demonstrate state remedies are exhausted).

### A. Claim 1(a)

Mr. Reid contends in claim 1(a) that the jury was not given a special verdict form to choose between first degree murder after deliberation and felony murder as to L.W. Claim 1(a) is similar to claim 2, in which Mr. Reid asserts a violation of double jeopardy because he was convicted of both murder after deliberation and felony murder as to L.W. Respondents concede claim 1(a) is exhausted to the extent the claim duplicates the double jeopardy argument in claim 2. However, to the extent claim 1(a) raises a separate due process violation, Respondents maintain claim 1(a) was not presented in either state court appeal and is not exhausted. Mr. Reid apparently concedes that claim 1(a) is duplicative of claim 2 because he now "asks that claims 1, and 2 be consolidated as one continues [sic] argument for relief." Docket No. 26 at p.9.

The Court finds that claim 1(a) is exhausted to the extent Mr. Reid is raising the

same double jeopardy argument presented in claim 2. However, Mr. Reid fails to demonstrate he has fairly presented a separate due process claim based on the same facts to the Colorado appellate courts. Therefore, the Court agrees with Respondents that claim 1(a) is not exhausted to the extent Mr. Reid is presenting a separate due process argument.

### B. Claim 1(b)

Mr. Reid contends in claim 1(b) that he was prosecuted under a charging document that was invalid because the statute of limitations had run on the predicate offense for the felony murder charge. Respondents argue claim 1(b) is not exhausted because Mr. Reid argued in his state court postconviction appeal only that the felony murder *conviction* is invalid and not that the *charging document* was invalid. In addition, Respondents argue that the claim Mr. Reid raised in his state court postconviction appeal regarding the validity of the felony murder conviction was presented solely as a question of state law and not as a federal constitutional claim.

Mr. Reid's exhaustion argument regarding claim 1(b) is not clear. He apparently asserts that claim 1(b) was raised in his certiorari petition on direct appeal and is exhausted, but his argument in the reply relates to the statute of limitations for the second degree murder conviction as to L.K. and not the felony murder conviction as to L.W. that is the subject of claim 1(b). *See* Docket No. 26 at p.9. Mr. Reid fails to demonstrate claim 1(b) in the second amended application was fairly presented to the state courts as a federal constitutional claim. Thus, the Court agrees with Respondents that claim 1(b) is not exhausted.

### C. Claim 3

In claim 3, Mr. Reid contends his constitutional rights were violated when his conviction for first degree murder of L.K. was amended to second degree murder. Respondents argue this claim was not fairly presented to the Colorado Court of Appeals because the claim was raised for the first time on appeal in the state court postconviction proceedings and was rejected by the Colorado Court of Appeals for that reason. Mr. Reid counters that claim 3 is exhausted because the claim was raised in his petition for certiorari review on direct appeal. The Court has reviewed Mr. Reid's petition for certiorari review on direct appeal and claim 3 in this action is not included among the issues presented for review in that petition. *See* Docket No. 25-6 at pp.2-3. Mr. Reid did argue in his appellate briefs in the state court postconviction proceedings that his conviction for second degree murder is invalid because he was not charged with second degree murder and the jury was not instructed on that offense, *see* Docket No. 25-9 at p.8 (opening brief); Docket No. 25-10 at p.9 (reply brief), but the Colorado Court of Appeals declined to address the arguments raised for the first time on appeal. *See* Docket No. 25-11 at p.7. Therefore, the Court agrees with Respondents that claim 3 was not fairy presented to the state courts and is not exhausted.

### D. Claim 4(b)

In claim 4(b), Mr. Reid challenges the allegedly illegal seizure of DNA evidence from a soda can and cigarette. Respondents argue that claim 4(b) was not fairly presented to the Colorado Court of Appeals because the claim was raised for the first time on appeal in the state court postconviction proceedings and was rejected by the

Colorado Court of Appeals for that reason. Mr. Reid makes no argument regarding claim 4(b), and the Court's review of the state court briefs and postconviction motion reveals that claim 4(b) was raised for the first time on appeal in the postconviction proceedings. Thus, the Court agrees with Respondents that claim 4(b) was not fairly presented to the state courts and is not exhausted.

### E.  Claim 5

Finally, Mr. Reid contends in claim 5 that his constitutional rights were violated by admission of Investigator Moore's statements during the video-recorded interrogation expressing certainty that Mr. Reid had murdered L.W. Respondents argue claim 5 is not exhausted because, although Mr. Reid raised a factually similar state law claim on direct appeal, he did not present the claim as a federal constitutional claim. Respondents concede that Mr. Reid made a reference to the "constitutional right to due process of law" with respect to the claim in his opening brief, but argue that this reference was not sufficient to fairly present a federal constitutional claim. Mr. Reid maintains that claim 5 was presented as a federal constitutional claim.

Mr. Reid argued in his opening brief on direct appeal that the trial court erred by admitting the videotape and the transcript of the interrogation because that evidence included Investigator Moore's statements expressing certainty that Mr. Reid had murdered L.W. Mr. Reid specifically argued that admission of the statements violated Rule 608(a) of the Colorado Rules of Evidence and that "[t]he admission of such evidence also results in the deprivation of a defendant's federal and state constitutional right to due process of law where it violates principles of fundamental fairness and

11

necessarily prevented a fair trial by an impartial jury due to its prejudicial quality." Docket No. 25-2 at p.66. Mr. Reid specifically cited the Fifth and Fourteenth Amendments to the United States Constitution and two United States Supreme Court cases. As a result, the Court finds that Mr. Reid raised claim 5 on direct appeal as a federal constitutional claim. *See Baldwin*, 541 U.S. at 32. Therefore, claim 5 is exhausted.

## IV. PROCEDURAL DEFAULT

The Court may not dismiss the unexhausted claims for failure to exhaust state remedies if Mr. Reid no longer has an adequate and effective state remedy available to him. *See Castille*, 489 U.S. at 351. Respondents contend Mr. Reid no longer has an adequate and effective state remedy available to him with respect to the unexhausted claims because the claims either were rejected by the Colorado Court of Appeals on an independent and adequate state procedural ground or are subject to an anticipatory procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (noting that, even if an unexhausted claim has not actually been raised and rejected by the state courts on a procedural ground, the claim is subject to an anticipatory procedural default if it is clear that the claim would be rejected because of an independent and adequate state procedural rule). In particular, Respondents argue that the prohibition against presenting a claim for the first time on appeal is an independent and adequate state procedural rule with respect to claims 3 and 4(b). Respondents assert that Rule 35(c)(3)(VII) of the Colorado Rules of Criminal Procedure prevents Mr. Reid from returning to state court to raise the due process argument in claim 1(a) and claim 1(b) in

a new postconviction motion. Rule 35(c)(3)(VII) provides that, with limited exceptions not applicable to Mr. Reid, the state court must dismiss any claim that could have been presented in a prior appeal or postconviction proceeding. Respondents also assert that a new postconviction motion would be barred by the applicable statute of limitations. *See* Colo. Rev. Stat. § 16-5-402(1).

Federal courts "do not review issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice." *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998). Application of this procedural default rule in the habeas corpus context is based on comity and federalism concerns. *See Coleman*, 501 U.S. at 730.

"A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision." *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998). A state procedural ground is adequate if it "was firmly established and regularly followed." *Beard v. Kindler*, 558 U.S. 53, 60 (2009) (internal quotation marks omitted).

Mr. Reid fails to demonstrate that Colorado's rule barring claims raised for the first time on appeal and Rule 35(c)(3)(VII) of the Colorado Rules of Criminal Procedure are not independent and adequate state procedural rules. In any event, the Court finds that they are independent because they rely on state rather than federal law. Colorado's rule barring claims raised for the first time on appeal and Rule 35(c)(3)(VII) also are adequate because they are applied evenhandedly by Colorado courts. *See, e.g.,*

13

*People v. Salazar*, 964 P.2d 502, 507 (Colo. 1998) ("It is axiomatic that issues not raised in or decided by a lower court will not be addressed for the first time on appeal."); *People v. Vondra*, 240 P.3d 493, 494-95 (Colo. App. 2010) (applying Crim. P. Rules 35(c)(3)(VI) and (VII) to reject claims that were or could have been raised in a prior proceeding); *see also LeBere v. Abbott*, 732 F.3d 1224, 1233 n.13 (10th Cir. 2013) (noting that several unpublished cases have indicated Colorado's rule barring claims that could have been raised previously is an independent and adequate state ground precluding federal habeas review). Colorado's statute of limitations for collateral attacks also is an independent and adequate state procedural ground. *See Klein v. Neal*, 45 F.3d 1395, 1398 (10th Cir. 1995). Therefore, the due process argument in claim 1(a) and claims 1(b), 3, and 4(b) are procedurally defaulted and cannot be considered unless Mr. Reid demonstrates cause and prejudice or a fundamental miscarriage of justice. *See Jackson*, 143 F.3d at 1317.

Mr. Reid fails to demonstrate cause and prejudice for his procedural default. He apparently contends that some claims were not fairly presented to the state courts because direct appeal counsel was ineffective. In certain instances, ineffective assistance of counsel can constitute cause to excuse a procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). However, Mr. Reid cannot demonstrate cause to excuse a procedural default premised on ineffective assistance of counsel unless the ineffective assistance of counsel claim first is raised as an independent constitutional claim in state court. *See id.* The Court's review of the record reveals that Mr. Reid did not fairly present to the state courts any claim that counsel on

direct appeal was ineffective. Therefore, he cannot rely on direct appeal counsel's alleged ineffectiveness to demonstrate cause.

Mr. Reid also fails to demonstrate that a fundamental miscarriage of justice will result if the Court does not consider the merits of the unexhausted claims. His vague and conclusory reference to actual innocence is not sufficient to demonstrate a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995) (stating that a credible claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial").

As a result, the unexhausted claims are procedurally barred and will be dismissed for that reason.

## V. MOTION FOR APPOINTMENT OF COUNSEL

The Court next will address the Prisoner Motion for Appointment of Counsel. Mr. Reid asks the Court to appoint counsel because he has no legal training, he does not have access to the prison law library due to the COVID-19 pandemic, his claims are complex and have merit, and he cannot afford to hire counsel.

"There is no constitutional right to counsel beyond the direct appeal of a criminal conviction." *Coronado v. Ward*, 517 F.3d 1212, 1218 (10th Cir. 2008). A judge may appoint counsel in § 2254 proceedings to a financially eligible individual if the Court "determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). A decision regarding appointment of counsel generally is "left to the court's discretion."

*Swazo v. Wyo. Dep't of Corr. State Penitentiary Warden*, 23 F.3d 332, 333 (10th Cir. 1994). "However, there is a right to counsel in a habeas case when the district court determines that an evidentiary hearing is required." *Id.* More specifically, Rule 8(c) of the Rules Governing Section 2254 Cases in the United States District Courts provides that, "[i]f an evidentiary hearing is warranted, the judge must appoint an attorney to represent a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A." Furthermore, Rule 6(a) provides that, "[i]f necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A."

The Court has made no determination regarding whether an evidentiary hearing is warranted in this action. In addition, no discovery has been authorized by the Court. Therefore, Mr. Reid is not entitled to appointment of counsel and the Court exercises its discretion in considering the motion.

The factors to consider in deciding whether to appoint counsel generally include the merits of the claims, the nature of the factual issues raised, the litigant's ability to present his claims, and the complexity of the legal issues being raised. *See Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995). "The burden is upon the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir. 1985).

The Court is not persuaded that appointment of counsel is necessary in the interests of justice. Mr. Reid has demonstrated an ability to present his claims and respond to the legal arguments raised by Respondents in the Pre-Answer Response.

Therefore, the motion for appointment of counsel will be denied.

## VI. CONCLUSION

In summary, Mr. Reid's state law claims are not properly raised in this habeas corpus action. The double jeopardy argument in claim 1(a) and claims 2, 4(a), and 5 are exhausted to the extent the claims rely on the same factual bases presented in state court. The due process argument in claim 1(a) and claims 1(b), 3, and 4(b) are unexhausted and procedurally barred. The motion for appointment of counsel will be denied. Accordingly, it is

**ORDERED** that Applicant's state law claims, the due process argument in claim 1(a), and claims 1(b), 3, and 4(b) are dismissed. It is further

**ORDERED** that within thirty days Respondent is directed to file an answer in compliance with Rule 5 of the Rules Governing Section 2254 Cases that fully addresses the merits of the remaining claims. It is further

**ORDERED** that within thirty days of the filing of the answer Applicant may file a reply, if he desires. It is further

**ORDERED** that the Prisoner Motion for Appointment of Counsel, Docket No. 27, is denied.

DATED October 13, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge