IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-00181-PAB

BILLY E. REID,

      Applicant,

v.

WARDEN JEFF LONG, Sterling Correctional, and
PHIL WEISER, Attorney General of the State of Colorado,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

Applicant Billy E. Reid is a prisoner in the custody of the Colorado Department of Corrections.   Mr. Reid has filed *pro se* a second amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, Docket No. 15, challenging the validity of his convictions and sentences in the District Court for Jefferson County, Colorado, case number 2006CR1797.   Respondents have filed an Answer, Docket No. 36, and the state court record.   Mr. Reid has not filed a reply despite being given an opportunity to do so.

After reviewing the entire record before the Court, the Court concludes Mr. Reid is not entitled to relief.

## I. BACKGROUND

The following background information is taken from the opinion of the Colorado Court of Appeals on Mr. Reid's direct appeal.

On February 14, 1988, police found the body of

twenty-three-year-old Q.S., an African-American woman, behind a dumpster in east Denver. Q.S. was clothed in a skirt, a top, and a jacket, but her underwear and pantyhose had been pulled down. There was evidence of anal sex, and forensic examination indicated she had sustained blunt force trauma to her neck and a hyoid bone fracture, consistent with strangulation.

More than a year later, on March 24, 1989, police found the partially decomposed and mummified body of L.K., a thirty-three-year-old African-American woman, on Lookout Mountain. Forensic examination established that she had fractures to the hyoid bone and the cartilage in her neck.

On October 14, 1989, police found the body of L.W., an African-American woman, near Clear Creek. She was thirty years old at the time of her death. L.W. was clothed in a sweater and jeans, but her jeans and underwear had been pulled down to her mid-thighs. An extension cord, a belt, and a tube sock were found wrapped around her neck, and a pair of pantyhose was clutched in her left hand. An autopsy revealed that L.W. had sustained blunt force trauma to her head, mouth, neck, chest, and lower back. Her hyoid bone was intact, but the cartilage surrounding it had been damaged.

Forensic examiners determined L.W. had died as a result of asphyxiation consistent with strangulation. The autopsy also revealed the presence of several stones in L.W.'s vaginal vault, the placement of which was consistent with manual insertion. In addition, semen was found in L.W.'s anal cavity. However, DNA analysis of the semen in 1990 failed to yield conclusive results.

Fifteen years later, cold case Investigator Moore reopened the L.W. and L.K. cases and submitted the evidence collected during investigation of L.W.'s death for analysis using modern technology. In addition to the semen found in L.W.'s anal cavity, a semen stain was discovered on the extension cord, and trace DNA was found at both ends of the extension cord and the belt. Technicians developed a DNA profile and performed a database comparison of that profile to known DNA profiles, which pointed to defendant.

On May 22, 2006, Moore interviewed defendant, who was incarcerated in the Denver County Jail (DCJ) on traffic matters. When shown photographs of L.W. and L.K., defendant acknowledged that it was possible that he had had sex with them, but stated that he did not recognize them and did not remember if he had ever known them. During the interview, Moore did not use L.W.'s last name, discuss the details of any of the crime scenes, or mention Q.S. at all. At the conclusion of the interview, Moore informed defendant that he would be charged with homicide, and returned defendant to the DCJ.

The next day, Kenneth Thomas, a DCJ inmate, telephoned Investigator Moore and stated that he had information regarding the L.W. murder from 1989. In a series of interviews, Thomas relayed information to her concerning conversations he had with defendant while both were in the DCJ that implicated defendant in the deaths of L.W. and L.K. According to Thomas, defendant said that he had strangled L.W. with his hands at a motel because L.W. had stolen drugs from him, and that he had both anal and vaginal sex with L.W. on the day she was killed. Thomas also furnished police with defendant's handwritten notes, which identified L.K. and Q.S. by name and L.W. by her initials.

Unaware of who Q.S. was, Investigator Moore had Detective Grimes contact and interview Thomas about her death. During that interview, Thomas reported defendant said that he used his hands to kill all three women because they had big mouths and that "it was over dope."

Docket No. 25-4 at pp.2-5.   Evidence regarding Q.S.'s homicide was admitted at Mr. Reid's trial for the limited purposes of establishing identity and a common plan or scheme, but he was not charged in connection with her death.   Thomas testified at trial that he could not remember speaking to or even meeting Mr. Reid, Investigator Moore, or Detective Grimes, but he was impeached with his prior inconsistent statements through the testimony of Investigator Moore and Detective Grimes.   Mr. Reid was

convicted by a jury on two counts of first degree murder after deliberation as to L.K. and L.W., one count of first degree felony murder as to L.W., and one count of first degree aggravated sexual assault by force or violence as to L.W.

On November 6, 2014, the Colorado Court of Appeals affirmed in part, vacated in part, and remanded with directions.   *See* Docket No. 25-4.

> We vacate defendant's judgment of conviction for first degree murder after deliberation with regard to L.K. and direct the trial court on remand to enter a judgment of conviction for second degree murder and to resentence defendant on that count. We also vacate defendant's conviction for first degree sexual assault and remand for correction of the mittimus to delete the conviction and sentence on that count. In all other respects, the judgment of conviction is affirmed.

*Id.* at p.101.   On January 19, 2016, the Colorado Supreme Court denied Mr. Reid's petition for certiorari review on direct appeal. *See* Docket No. 25-7.   On remand, Mr. Reid was sentenced to forty-eight years in prison for the second degree murder of L.K. to be served consecutively to a life sentence for the first degree murder of L.W.   *See* Docket No. 25-1.

In January 2017, Mr. Reid filed in the trial court a postconviction motion pursuant to Rule 35(a) of the Colorado Rules of Criminal Procedure.   *See* Docket No. 25-8. The trial court denied the motion and, on February 14, 2019, the Colorado Court of Appeals affirmed the trial court's order denying the Rule 35(a) motion.   *See* Docket No. 25-11.   On November 12, 2019, the Colorado Supreme Court denied Mr. Reid's petition for certiorari review in the postconviction proceedings.   *See* Docket No. 25-12.

Mr. Reid asserts five claims in the second amended application, including two

claims with subparts.   In claim 1, he contends his rights under the United States Constitution and Colorado state law were violated because (a) the jury was not given a special verdict form to choose between first degree murder after deliberation and felony murder as to L.W. and (b) he was prosecuted under a charging document that was invalid because the statute of limitations had run on the predicate offense for the felony murder charge.   In claim 2, he contends he was subjected to double jeopardy in violation of the state and federal constitutions because he was convicted of both murder after deliberation and felony murder as to L.W.   Mr. Reid contends in claim 3 that his state and federal constitutional rights were violated when his conviction for first degree murder of L.K. was amended to second degree murder.   In claim 4, he contends his Fourth and Fourteenth Amendment rights were violated by (a) admission of a video recording showing him in jail attire and handcuffed and (b) illegal seizure of DNA evidence from a soda can and cigarette.   Finally, Mr. Reid contends in claim 5 that his state and federal constitutional rights were violated by admission of Investigator Moore's statements during the video-recorded interrogation.

The Court previously entered an Order, Docket No. 34, dismissing Mr. Reid's state law claims, the due process argument in claim 1(a), and claims 1(b), 3, and 4(b). Additional facts pertinent to the remaining claims are set forth below.

## II. STANDARDS OF REVIEW

The Court must construe the second amended Application liberally because Mr. Reid is not represented by an attorney.   *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).   However, the Court

should not be an advocate for a *pro se* litigant. *See* Hall, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   Mr. Reid bears the burden of proof under § 2254(d).   *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The Court's inquiry is straightforward "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).   "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."   *Id.*   When the last state court decision on the merits "does not come accompanied with those reasons," . . . the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.*   The presumption may be rebutted "by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed."   *Id.*

The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Reid seeks to apply a rule of law that was clearly established by the Supreme Court at the time the state court adjudicated the claim on its merits.   *Greene v. Fisher*, 565 U.S. 34, 38 (2011).   Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."   *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).   If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id.* at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.   *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405, 120 S. Ct. 1495). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405, 120 S. Ct.

1495 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08, 120 S. Ct. 1495.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.   *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.   Rather that application must also be unreasonable."   *Id.* at 411.   A decision is objectively unreasonable "only if all fairminded jurists would agree that the state court got it wrong."   *Stouffer v. Trammel*, 738 F.3d 1205, 1221 (10th Cir. 2013) (internal quotation marks omitted).   Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted, brackets in original).   In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the

8

Supreme] Court." *Id.* at 102.   In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181.

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court.   Pursuant to § 2254(e)(1), the Court presumes the state court's factual determinations are correct and Mr. Reid bears the burden of rebutting the presumption by clear and convincing evidence.   The presumption of correctness applies to factual findings of the trial court as well as state appellate courts.   *See Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015).   The presumption of correctness also applies to implicit factual findings.   *See Ellis v. Raemisch*, 872 F.3d 1064, 1071 n.2 (10th Cir. 2017).

Finally, the Court's analysis is not complete even if Mr. Reid demonstrates the

state court decision is contrary to or an unreasonable application of clearly established

federal law or was based on an unreasonable determination of the facts in light of the

evidence presented.   *See Harmon v. Sharp*, 936 F.3d 1044, 1056 (10th Cir. 2019),

*cert. denied*, 141 S. Ct. 294 (2020).   If the requisite showing under § 2254(d) is made,

the Court must consider the merits of the constitutional claim *de novo*.   *See id.* at

1056-57.

If a claim was not adjudicated on the merits in state court, and if the claim also is

not procedurally barred, the Court reviews the claim *de novo* and the deferential

standards of § 2254(d) do not apply.   *See id.* at 1057.   However, even if a claim is not

adjudicated on the merits in state court, the Court still must presume the state court's

factual findings pertinent to the claim are correct under § 2254(e).   *See id.*

## III. MERITS OF REMAINING CLAIMS

### A. Claims 1(a) and 2

Mr. Reid contends in claim 1(a) that the jury was not given a special verdict form

to choose between first degree murder after deliberation and felony murder as to L.W.

Claim 1(a) is similar to claim 2, in which Mr. Reid asserts a violation of double jeopardy

because he was convicted of both murder after deliberation and felony murder as to

L.W.   The Court previously determined claim 1(a) is exhausted to the extent the claim

duplicates the double jeopardy argument in claim 2.

The Double Jeopardy Clause protects against multiple punishments for the

same offense.   *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other

grounds by Alabama v. Smith*, 490 U.S. 794 (1989).   The Colorado Court of Appeals

reviewed the double jeopardy claim for plain error and rejected the claim because Mr.

Reid was not subjected to multiple punishments for the same offense.   The state court

explained as follows:

> The Double Jeopardy Clauses of both the United States and Colorado Constitutions protect an accused from being twice placed in jeopardy for the same offense. U.S. Const. amend. V; Colo. Const. art II, § 18; *Boulies v. People*, 770 P.2d 1274, 1277 (Colo. 1989).

> In a case involving a single victim, allowing judgments of conviction to enter for both felony murder and first degree murder after deliberation would violate double jeopardy. *People v. Glover*, 893 P.2d 1311, 1314 (Colo. 1995) ("A court may not enter judgments of conviction for felony murder and murder after deliberation for the murder of a single victim."); *see also People v. Vigil*, 251 P.2d 442, 448 (Colo. App. 2010) ("Multiplicitous convictions are prohibited because they violate the constitutional prohibition against double jeopardy."). However, as our supreme court explained in *Wood*, "when a mittimus provides that two multiplicitous convictions merge or that one such conviction merges into the other, the defendant is afforded the protections to which he is entitled under the double jeopardy clause just the same as when a mittimus indicates that one of two multiplicitous convictions is vacated." *Wood*, ¶ 34; *see also Reyna-Abarca*, ¶¶ 79, 81; *People v. Rhea*, 2014 COA 60, ¶ 19 (noting that any double jeopardy concerns arising from multiplicitous charges and convictions can be cured by merger at sentencing.

> Here, the jury found defendant guilty of two counts of first degree murder involving L.W., and defendant's mittimus states that he was found guilty after a trial of "Murder 1 – After Deliberation," and "Murder 1 – Felony Murder." However, the court did not impose a sentence for the felony murder conviction and noted on the mittimus that the felony murder count merges into the murder after deliberation count for sentencing.

> Thus, because defendant's mittimus clearly states

> that count 2 (the felony murder conviction) merged into count 1 (the first degree murder after deliberation conviction), he is protected against multiple punishments for the same offense, and there is no double jeopardy violation. *See Wood*, ¶ 36 ("[S]o long as merger protects against punishments the legislature hasn't authorized, there is no infringement of the double jeopardy clause.").

Docket No. 25-11 at pp.8-10.

Mr. Reid does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result.   *See House*, 527 F.3d at 1018.   Therefore, he fails to demonstrate the state court's determination was contrary to clearly established federal law under § 2254(d)(1).

Mr. Reid also fails to demonstrate the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2).   It is undisputed that, although the jury found Mr. Reid guilty of both first degree murder after deliberation and first degree felony murder involving L.W., the mittimus notes the felony murder count merges with the first degree murder count and he was not sentenced separately on the felony murder count.

Because the undisputed facts demonstrate Mr. Reid was not sentenced twice for two counts of first-degree murder with respect to L.W., the state court's rejection of the Double Jeopardy claim is not an unreasonable application of clearly established federal law under § 2254(d)(1).   *See Wilson v. Sec'y*, No. 2:12-cv-265-FtM-38, 2014 WL 7251671 at *14 (M.D. Fla. Dec. 19, 2014) (state court decision rejecting Double Jeopardy claim premised on multiple punishments for the murder of one victim not an

unreasonable application of clearly established federal law when "the record conclusively shows that although the jury returned a guilty verdict for both felony murder and first degree murder, at sentencing the counts were merged and Petitioner was only sentenced for one count of first degree murder.").

For these reasons, Mr. Reid is not entitled to relief on his double jeopardy argument in claims 1(a) and 2.

**B. Claim 4(a)**

Mr. Reid contends in claim 4(a) that the trial court violated his right to due process by admitting into evidence a video recording of his interview with Investigator Moore depicting him in jail attire and handcuffs.   As noted above, Mr. Reid was detained in the Denver County Jail on unrelated traffic matters when he was interviewed by Investigator Moore pertinent to the deaths of L.W. and L.K.   There is no dispute that Mr. Reid was wearing jail attire during the interview.   Regarding the handcuffs, the Colorado Court of Appeals determined as a factual matter that "a portion of the video shows defendant standing while handcuffed[,] [b]ut that portion of the video is only eleven seconds long and, due to the quality of the video, the handcuffs themselves are not plainly visible."   Docket No. 25-4 at p.41.

"The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment" and the presumption of innocence "is a basic component of a fair trial under our system of criminal justice."   *Estelle v. Williams*, 425 U.S. 501, 503 (1976). Consistent with these principles "the State cannot . . . compel an accused to stand trial before a jury while dressed in identifiable prison clothes."   *Id.* at 512.   Furthermore,

13

"the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial."  *Deck v. Missouri*, 544 U.S. 622, 629 (2005).

The Colorado Court of Appeals assumed "there is no difference between a defendant who stands trial appearing before the jury in jailhouse attire or shackled and an admitted videotaped, out-of-court interview of the defendant depicting him the same way."  Docket No. 25-4 at p.42.  The state court then rejected Mr. Reid's claim challenging admission of the video recording because he failed to demonstrate he suffered any prejudice.  The state court reasoned as follows:

> It is undisputed that defendant was in custody at the time of his videotaped interview. All parties acknowledged that the tape would be admitted at trial. In fact, defense counsel told the jury in opening statement that defendant was "sitting in the Denver County jail" on May 22, 2006, and was brought to Jefferson County so Investigator Moore could interrogate him. Moreover, defense counsel expressly pointed to the fact that the prosecution would "play the videotape" of the interrogation.
>
> Thus, not only did the jury know from defense counsel that defendant was incarcerated at the time of the interview, but it fully expected to see the videotape of the interrogation conducted at the jail.
>
> On appeal, defendant avers that "having a defendant appear in jailhouse garb at his trial would never be prejudicial" if we were to decide there was no prejudice here. But defendant ignores the reasoning employed by the decisions he relies upon in making this argument.
>
> In *Estelle*, 425 U.S. at 512, the Court held that a state cannot compel a defendant to stand trial wearing prison or

jail clothing if the defendant makes a timely objection. *Id.* However, the Court acknowledged this rule aimed to alleviate the concern "that the *constant* reminder of the accused's condition implicit in such distinctive attire may affect a juror's judgment." *Id.* at 504-05 (emphasis added).

The videotaped interview here was played for approximately one hour and twenty-two minutes during a lengthy trial. Therefore, the prison attire defendant wore during the videotaped interview did not act as a "constant reminder" during the course of trial. *See id.* Instead, the jury observed defendant in jail attire for a limited time on a videotape that defense counsel told the jury it would see. Therefore, we conclude that the defendant was not prejudiced.

And because the handcuffs were not plainly visible and defendant was not prejudiced, we conclude defendant's constitutional rights were not violated.

Docket No. 25-4 at pp.43-45.

Mr. Reid is not entitled to relief with respect to claim 4(a) under § 2254(d)(2) because he does not present any argument regarding the state court's factual determinations pertinent to this claim. In particular, he does not dispute that all parties acknowledged the videotape would be introduced at trial, defense counsel stated during his opening statement that Mr. Reid was in custody when the interview took place and that the jury would see the video, Mr. Reid was handcuffed for only eleven seconds of the eighty-two-minute video, the handcuffs were not plainly visible, and the trial was lengthy.

Mr. Reid also fails to demonstrate that the state court's rejection of this claim was contrary to or an unreasonable application of clearly established federal law under § 2254(d)(1).   As the state court noted, the Supreme Court in *Estelle* was concerned

"that the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment." *Estelle*, 425 U.S. at 504-05.   It was not unreasonable to conclude admission of the video recording of Mr. Reid's eighty-two-minute jailhouse interview during a trial that lasted more than three weeks does not implicate the same concern.   With respect to the eleven-seconds of the video recording showing Mr. Reid in handcuffs, the state court's decision is not contrary to or an unreasonable application of *Deck* because the handcuffs were not plainly visible.

Finally, even if a constitutional error did occur, "habeas petitioners are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice." *Davis v. Ayala*, 576 U.S. 257, 267 (2015) (internal quotation marks omitted).   Under *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict.   "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006) (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)).   "Grave doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435.

Mr. Reid fails to demonstrate he suffered actual prejudice.   The duration of the video recording was relatively brief in the context of the entire trial and, even without the video recording, the jury was aware Mr. Reid was confined at the Denver County Jail based on admission of his statements to fellow inmate Kenneth Thomas.   The fact

that defense counsel informed the jury during his opening statement they would see the videotape of Mr. Reid's interview and that Mr. Reid was in custody at that time also supports the conclusion that he was not prejudiced.   *See United States v. Graham*, 643 F.3d 885, 896 (11th Cir. 2011) (no prejudice from jurors seeing the defendant in prison attire because defense counsel used the fact for strategic advantage and the defendant testified about his incarceration and prison attire); *United States v. Alexander*, 155 F. App'x 378, 380 (9th Cir. 2005) (any error due to the defendant being tried in jail attire was harmless because the defense opening statement informed the jury the defendant was in custody); *see also U.S. ex rel. Stahl v. Henderson*, 472 F.2d 556, 557 (5th Cir. 1973) (per curiam) (no prejudice from being tried in prison uniform in case involving the murder of a fellow inmate because "[n]o prejudice can result from seeing that which is already known.").

For these reasons, Mr. Reid is not entitled to relief with respect to claim 4(a).

**C. Claim 5**

Mr. Reid contends in claim 5 that his federal constitutional rights were violated by admission of Investigator Moore's statements during the video recorded interrogation.   According to Mr. Reid, the statements express Investigator Moore's certainty that he committed the murders and that the district attorney and the judge held the same belief.

The Colorado Court of Appeals recited the following background for this claim:

> In addition to depicting defendant in jail attire, the videotape included statements made by Investigator Moore. Defendant asserts admission of the following conversation,

without redaction of her statements, deprived him of a fair
trial:

> [Moore]: If you were selling drugs to these girls, again,
> now is the time to be up front and tell me.
>
> [Defendant]: No I . . .
>
> [Moore]: Now is the time to give me your side of the
> story, 'cause that, that's what goes to the district
> attorney's office. That's what, what they see. That's
> what the judge sees when we put things together.
>
> [Defendant]: Um mmm. And I, you know, I'm just, you
> know, I'm trying to be, I'm, you know, I'm being
> honest. I, I do not, I don't remember [those girls]. I'm
> serious[], I don't.
>
> . . .
>
> [Moore]: Billy, have you killed a whole bunch of
> women?
>
> [Defendant]: No, I've killed no one.
>
> [Moore]: Well I can tell you that you killed this girl.
>
> [Defendant]: I didn't. I didn't.
>
> [Moore]: Well I can tell you that you killed this girl
> Billy. Your semen is in this girl, on this girl . . .
>
> [Defendant]: Does that mean I . . .
>
> [Moore] . . . in a multitude of locations.
>
> [Defendant]: Does that mean I killed her though?
>
> [Moore]: Okay. Well[,] sit tight for a few more minutes,
> see what we can do to get you out of here.
>
> . . .

[Moore]: Okay you're gonna go back [to the DCJ] Billy. These guys are going to take you back.

[Defendant]: Can I use the bathroom?

[Moore]: Um, yea in just a minute. Um, when you get back though you're going to have a new charge for this homicide.

[Defendant]: Okay.

Docket No. 25-4 at pp.46-47 (brackets in original).   The Colorado Court of Appeals

rejected Mr. Reid's claim that the failure to redact these statements deprived him of a

fair trial.

> Finally, defendant contends the admission of Investigator Moore's statements deprived him of a fair trial because her statements indicate the police, district attorney, and judge believed defendant was guilty of the crimes charged. We disagree.
>
> In making this argument, defendant primarily relies on *People v. Mullins*, 104 P.3d 299 (Colo. App. 2004). In that case, the prosecutor questioned the investigating officer about the procedure police must follow to obtain a warrant. *Id.* at 301. The officer stated that police "have to show probable cause" and defined that term as "enough information with the statements and evidence that a person committed a particular crime." *Id.* In addition, the officer explained that the information is "present[ed] . . . to the judge" who then "makes a determination . . . if there is probable cause" and, if the judge believes there is, "then [the judge] signs the warrant." *Id.* Because probable cause was not an issue at the trial, the court held that it was plain error to admit such statements. *Id.* at 301-02.
>
> *Mullins* is readily distinguishable from this case. Investigator Moore did not testify to the procedure used to charge defendant. During the interview, she indicated the district attorney and the judge would "see" any information provided. However, she did not indicate any action would

19

occur as a result of the information and certainly did not testify to such at trial. Furthermore, unlike the issue of probable cause in *Mullins*, Investigator Moore's statements were relevant in this case.

It is an unavoidable fact in all criminal trials that the defendant is on trial because the government has decided to prosecute. Such a fact is necessarily accompanied by the inference that the government had chosen to disbelieve a defendant's account of events. However, the presence of this inference does not deprive a defendant of a fair trial. *Cf. Finley*, 477 F.3d at 262 (reasoning jury would understand investigating officers would not believe a defendant just as jurors understand the government did not believe defendant when it decided to prosecute him). Thus, Investigator Moore's statements did not create any inference that deprived defendant of a fair trial.

Docket No. 25-4 at pp.55-57 (brackets in original).

"Habeas relief may not be granted on the basis of state court evidentiary rulings unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results."   *Mayes v. Gibson*, 210 F.3d 1284, 1293 (10th Cir. 2000).   A proceeding is fundamentally unfair so as to deprive the defendant of due process of law if it is "shocking to the universal sense of justice."   *United States v. Russell*, 411 U.S. 423, 432 (1973) (internal quotation marks omitted).   Stated another way, introduction of evidence fails the due process test of "fundamental fairness" if the evidence "is so extremely unfair that its admission violates fundamental conceptions of justice."   *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal quotation marks omitted).   As these tests demonstrate, the Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly."   *Id.*

"[B]ecause a fundamental-fairness analysis is not subject to clearly definable

legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self restraint."   *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks omitted).   The Court's "[i]nquiry into fundamental unfairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner."   *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (per curiam).

Mr. Reid fails to demonstrate the decision of the Colorado Court of Appeals regarding this due process claim is based on an unreasonable determination of the facts in light of the evidence presented.   He also fails to demonstrate the decision is either contrary to or an unreasonable application of clearly established federal law. He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result, *see House*, 527 F.3d at 1018, and he fails to demonstrate the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," *Richter*, 562 U.S. at 103.   Based on the Court's review of the entire proceedings, the Court cannot conclude that admission of Investigator Moore's statements rendered Mr. Reid's trial fundamentally unfair.   As a result, the Court finds that Mr. Reid also is not entitled to relief with respect to claim 5.

## IV. CONCLUSION

For the reasons discussed in this order, Mr. Reid is not entitled to relief on any of his remaining claims.   Accordingly, it is

**ORDERED** that the second amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, Docket No. 15, is denied and this case is dismissed with prejudice.   It is further

**ORDERED** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED January 25, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge